The question arising under his will is whether the reversion of the land sued for passed by the residuary clause, *Page 119 
or whether it descended upon the heirs at law. After examining the numerous cases cited, and relating to this subject, we are led to the conclusion that the testator did not dispose of the reversion by his will, and, consequently, that the plaintiffs, who derive their title from the heir at law, are entitled to judgment.
It is said in 3 Wilson, 141, and we have felt the propriety of the observation in considering this case, that cases in the books upon wills may serve to guide with respect to general rules in the construction of devise, but unless a case cited be in every respect directly in point, and agree in every circumstance with that in question, it will have little or no weight with the court, who always look upon the intention of the testator, as to the polar star, for directing them in the construction of wills.
It cannot be questioned that Hood Harris took only an estate for life, under the devise made to him in 1783. This is too firmly established by repeated adjudications to be now shaken by any court, though it is difficult to reconcile such decisions with the doctrine that the intention shall govern and that the intention, in all general devises, is to pass a fee.
But, with respect to the residuary clause, we are not so fettered by authorities, because none are precisely in point. We are at liberty to explore the intention of the testator, and, having ascertained it, are bound to give it effect.
Let any person of plain understanding take up this will and reflect upon the common import of the words, independently of any rule of law upon the subject, and the probability is that he would pronounce decisively against an intention to pass the fee. The word "estate" he would understand as comprehending everything a man owned, and if it stood alone would be sufficient to pass everything. But it would be equally apparent to him that the testator might explain the sense in which he used the word; that he had explained it in this clause, and, thereby, materially restrained its familiar acceptation. The testator undertakes to specify that the estate he thus gives away consists of (151) (or in other words is composed of) various articles too tedious to mention. Thus the terms, as well as the description of them, are strictly referable to personal property. No person would understand the word "articles" as relating to land; nor could it be tedious to mention a reversion, although it would have been so to enumerate the great variety of articles of which chattel property usually consists.
This probable deduction of common sense and inartificial reasoning is supported and upheld by the general authority of the cases, in all of which the intention is collected from the particular words employed. *Page 120 
The rule is that the word "estate" has a very comprehensive meaning, and will, without any additional words to enlarge it, convey whatever testator is seized or possessed of; more especially if an interlocutory clause in the will indicated a design of not dying intestate as to any part.
But the word may be restrained, explained, or limited; and the Court must understand it in that sense only in which the testator employs it.
On the part of the defendant many cases have been cited to prove the position that the words "rest of my estate," though coupled with words of personalty, will carry the reversion remaining undisposed of after an estate for life. This is perfectly correct, if understood with this qualification, that there must be an apparent intention to pass the real estate.
In 3 Atkyns, 492, the words were "all the rest, residue, and remainder of my goods, chattels, and personal estate, together with my real estate
not hereinbefore devised, I give to my wife," etc.
It was upon the latter words in the will that the reversion was held to pass; and, surely, language more unequivocal as to such intention could not have been found.
In 1 Wilson, 333, the words are: "As to my temporal estate, I dispose thereof as follows," etc., and afterwards says: "All the rest of my goods and chattels, real and personal, movable and immovable, as (152) tenements," etc. The principle of this decision perfectly accords with our opinion in the present case. Lord Hardwick explains it to be that the testator himself had declared what he meant by the words "goods and chattels, real and personal," etc. But adds he, "If he had not so explained himself, I do not think that the words `goods and chattels, real and personal,' etc., would have carried the lands by the law of England, though they might have done so by the civil law; and the word `as' is as much as to say, `I mean.'" So, we repeat that the testator has declared what he meant by the word estate; but if he had not so explained himself, it would have carried the reversion.
The case cited from Cowper, 299, is distinguishable from the present by two circumstances: (1) The will contained an interlocutory clause, on which considerable stress was laid by the Court as showing that the testator meant to dispose of all his estate. (2) The words of the residuary clause were, "all the remainder and residue of all his effects, both real and personal." On these words Lord Mansfield remarks, "The natural and true meaning of real effects, in common language and speech, is real property; and real and personal effects are synonymous to substance, which includes everything that can be turned into money."
The words of the sweeping clause in H. Bl., 223, are equally strong: *Page 121 
"all the rest and residue of my estate, of what nature or kind soever." As the testator had two kinds of estate, real and personal, to which the words might be applied, it was with the utmost propriety the Court refused to restrain the meaning of them to personal property, and destroy their operation as to real property.
Very large introductory words in the case cited from 2 H. Bl., 444, and the words testamentary estate in the residuary clause, formed the ground of decision. Testamentary is whatever may be given by will, and is equally applicable to real and personal property.
The decision in Comyn's Reports, 164, was founded on the words, "whatever else I have in the world."
We have been unable to find any case that amounts to an (153) authority against the opinion we have expressed; none where the intention to pass the real estate was not easily to be collected from the will, and could not fairly be mistaken.
But there are several authorities that bear a strong resemblance to the case before us, and at least confirm the reasoning on which our judgment is founded.
In Timewell v. Perkins, 2 Atkyns, 102, the substance of the will which produced the question was, "All my freehold lands in the tenure of the widow L., and the residue of my estate, consisting in ready money, jewels, leases, judgments, mortgages, etc., or in any other thing wheresoever or whatsoever, I give to A. B. or her assigns, forever." The question was whether the residue passed to A. B. or not; and the reasoning of the judge who tried the cause was, on this point, as follows:
"It has been insisted for the plaintiff that the words in the preamble of the will, `as touching the temporal estate,' etc., show plainly the testator's intention to dispose of his whole estate, and that the court will never intend an intestacy of any part; and that the word estate will include lands as well as personal estate, and though coupled with words applicable to personal, will yet pass freehold.
"Although it would have been stronger if the word real had been added, yet, however, this will not do unless there are some words that show the intention to pass the real estate, or the court will intend an intestacy in favor of the heir at law.
"The word estate itself may indeed include as well real as personal; yet when the testator has expressed himself by such words as are applicable to personal will yet pass free hold.
"Whatsoever and wheresoever must be confined to the things antecedent, and is restrained to the hop grounds and leaseholds, for if he intended to give his wife all his real estate, why did he mention only the Essex estate? *Page 122 
"Estate, when it is only coupled with things that are personal, shall be restrained to personals. Cro. Cir., 457, 449; Sir Wm. Jones, (154) 380.
"Here the word estate is expressly confined to personals, as plate, jewels, rings, judgments, mortgages, etc., which are all personal estate, and, therefore, I think the residue of the real estate does not pass.
"But supposing it would admit of a doubt, yet certainly the heir at law ought to be preferred, unless the intention of the testator to exclude him appears exceeding plain."
In addition to this case, we refer to 1 Eq. Cas. Abr., 211; Sir T. Raym, 453; Cowper, 238, and conclude by remarking that the will before us contains no interlocutory clause; and although a bequest is made to the heir at law, there are no legatory words to take the estate from him, and it is against every just principle of construction to indulge in implication and refinement to his disherison.
Judgment for the plaintiff.
NOTE. — Under the act of 1784 (1 Rev. Stat., ch. 122, sec. 10) a devise of real estate to any person is to be construed a devise in fee, unless an estate of less dignity is given in express words, or an intention to that effect manifestly appear in the will or some part thereof.
As to what passes by a residuary clause in a will, see Arrington v.Alston, 6 N.C. 321; Powell v. Powell, post, 727; Reeves v. Reeves,16 N.C. 386; Speight v. Gatling, 17 N.C. 5; Frazer v. Alexander,17 N.C. 348; Harrell v. Hoskins, 19 N.C. 479.
Cited: Clark v. Hyman, 12 N.C. 385; Page v. Atkins, 60 N.C. 270.